CC TO JUDGE DM

THE HONORABLE BARBARA J ROTHSTEIN

FILED ____ ENTERED
LODGED ____ RECEIVED

OCT 17 2002 DM

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| QWEST COMMUNICATIONS INTERNATIONAL INC, a Delaware corporation, and QWEST COMMUNICATIONS CORPORATION, a Delaware corporation,<br><br>Plaintiffs,<br><br>v<br><br>ONEQWEST, LLC, a Florida limited liability company,<br><br>Defendant | NO C 02-829R<br><br>QUEST'S MOTION FOR CONTEMPT OF COURT ORDER AND FOR SANCTIONS<br><br>**NOTE ON MOTION CALENDAR:**<br>November 1, 2002 |

CV 02-00829 #00000034

# CONTENTS

I. INTRODUCTION 1

II. STATEMENT OF FACTS 2

    A    The Court's April 2002 Temporary Restraining Order 2

    B    OneQwest's Violation of the Court's September 2002 Discovery Order 5

III. ONEQWEST SHOULD BE SANCTIONED TO PRESERVE THE INTEGRITY OF THE COURT, ADDRESS THE PREJUDICE THAT HAS BEFALLEN QWEST AND TO DETER ONEQWEST AND CYBER PIRATES LIKE ONEQWEST FROM SIMILAR CONDUCT 7

    A    Dispositive Sanction Is An Appropriate Sanction In This Case 7

    B    The Court Should Sanction OneQwest For Violating the September Order By Deeming Issues For Which Discovery Was Sought But Refused As Established For Purposes of This Action 10

    C    An Award of Attorneys' Fees and Costs Is Another Appropriate 11

IV. CONCLUSION 12

# TABLE OF AUTHORITIES

**Cases**

*Chambers v. NASCO* 111 S Ct 2123, 2136, (1991) . 12

*G-K Properties v. Redevelopment Agency of the City of San Jose,*
577 F 2d 645, 647 (9th Cir 1978) .8

*G-K Properties,* 577 F 2d at 647 .8

*Minnesota Mining & Mfg. Co v Eco Hem, Inc.,*
757 F 2d 1256, 1259, 1260 (Fed Cir 1985) 8

*Minnesota Mining,* 757 F 2d at 1261 9

*National Hockey League v. Metropolitan Hockey Club, Inc.,*
427 U S 639, 641, 96 S Ct 2778 (1976) 8

*Navellier v. Sletten,* 262 F 3d 923, 947 (9th Cir 2001) . 10

*Refac Int'l, Ltd. v. Hitachi, Ltd.,* 921 F 2d 1247 (Fed Cir 1990) 10

*United Artists Corp. v La Cage Aux Folles, Inc.,*
771 F 2d 1265 (9th Cir 1985) . 8

*Webster v Omnutrition International, Inc ,*
74 F 3d 776, 781 (9th Cir , 1996) 3

**Statutes**

F R Civ P 37(a)(3) . . 9

F R Civ P 37(b)(2)(c) 7, 8

F R Civ P 37(b)(2)(d) 7, 8, 9, 11

Fed R Civ P 37 . passim

QUEST'S MOTION FOR CONTEMPT OF COURT
ORDER AND FOR SANCTIONS (NO C 02-829R) - 11
[13141-0485/LA022850 018]



1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE 206 583 8888
FAX 206 583 8500

## I. INTRODUCTION

By this Motion, Plaintiffs Qwest Communications International Inc and Qwest Communications Corporation (hereinafter collectively referred to as plaintiff "Qwest") seek dispositive and issue sanctions against Defendant OneQwest pursuant to Fed R Civ P 37, and the Court's inherent power, and an award of attorneys' fees and costs as additional sanctions Qwest submits that dispositive, monetary and issue sanctions are appropriate for four reasons

First, OneQwest has repeatedly violated Court orders that commanded OneQwest to come forward with its discovery of its financial records, its members and the relationship of the individuals and officers that promoted OneQwest's internet subscription sales

Second, OneQwest has already been sanctioned for failing to provide discovery about its business operations and for its willful conduct In addition, the Court has warned OneQwest that far more severe sanctions would be imposed against it should it fail to comply

Third, OneQwest has continuously violated the Court's Injunction, which ordered OneQwest to purge its websites and to stop using Qwest's famous marks in connection with its dubious multilevel marketing scam To this day, OneQwest is still using its infringing marks

Fourth, based on OneQwest's admissions and partial discovery responses, it is now clear that OneQwest's business activities were specifically designed to reap millions by defrauding the public into believing that it was purchasing "future internet minutes" under Qwest's famous marks

Qwest has been prejudiced by OneQwest's continued infringement and by its failure to provide discovery Many months after discovery began, and after being ordered by this Court to do so, OneQwest's refusal to provide the evidence that Qwest needs for trial proves that, despite its various broken promises and contempts, it never intended to fulfill its duties as a party Default, issue sanctions and an award of attorneys' fees and costs pursuant to Fed R Civ P 37 is therefore the only appropriate sanction The sanctions sought herein are particularly tailored to the abuses committed and appropriate to deter profiteers of the Internet from using well-known names to defraud the public and injure the companies they infringe The sanctions sought are well within the acceptable range of sanctions as defined by well-settled Ninth Circuit law Each of these points is treated in more detail below

## II. STATEMENT OF FACTS

Defendant OneQwest's conduct throughout this litigation has consisted of repeated violations of each of the Court's various orders and its obligations under the Federal Rules of Civil Procedure A more detailed briefing of the defendant's egregious conduct is set out in the Plaintiff's CR 37 Submission and in the Discovery Report filed October 1, 2002.[1] *See* Declaration of William C Rava in Support of Qwest's Motion for Contempt of Court Orders and for Sanctions ("Rava Decl ") ¶2, Ex A (Discovery Report) (for the Court's convenience, Qwest's Discovery Report is sequentially numbered for reference herein )

### A. The Court's April 2002 Temporary Restraining Order

Qwest filed the original Complaint against OneQwest on April 15, 2002 The Complaint sought injunctive and monetary relief for trademark infringement, cyber piracy and

---

[1] It should be noted that defendant has not rebutted any of the long list of discovery violations carefully set out in Plaintiff's Discovery Report filed two weeks ago Moreover, defendant had ample time to provide supplemental (but untimely) responses but failed to do so

QUEST'S MOTION FOR CONTEMPT OF COURT
ORDER AND FOR SANCTIONS (NO C 02-829R) - 2
[13141-0485/LA022850 018]



1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE 206 583 8888
FAX 206 583 8500

various other violations under federal and state law. OneQwest sold memberships at a charge of $1,300. OneQwest marketed the memberships under the lure of "Inflated Income" derived from selling subscriptions to others under a complex multi-level compensation scheme. *See* Declaration of William C. Rava in Support of Qwest' Motion for TRO ¶ 3 (filed April 15, 2002). Qwest also moved for a TRO, and the Court held a hearing on April 18, 2002. At that hearing, OneQwest was found to be infringing Qwest's famous marks and working with a network of affiliated parties (Phil Piccolo, NetQwest, OneNet Place, etc.) to promote and extend a dubious multi-level marketing scheme—each level of which was infringing Qwest's intellectual property rights. The court stated:

> **[T]here is no question that this is, as defendant has already admitted, an infringing trademark.** It's so close. There is no question in the Court's mind that there's a likelihood of confusion here
>
> \* \* \*
>
> **What makes this even more serious is the fact that this is occurring in an area that's almost identical to the area in which Qwest operates.** I think that the Court will be granting a TRO. And one of the reasons – not only is the Court finding infringement, but the Court finds that the public interest requires a TRO. **I think that [consumers] will be led to believe that they're dealing with, again, a major corporation on a nationwide scale with a history of reliability. And therefore, I think there's a real public interest in stopping [OneQwest] right now**[2]

Rava Decl. ¶3, Ex. B (April 18, 2002 Transcript of Proceedings ("Transcript")) at pp. 26-27) (emphasis added)

---

[2] Qwest demonstrated in its opening brief that OneQwest's business operations met all of the criteria of an illegal pyramid scheme. While defendants have claimed that their business is legitimate, zero evidence has been produced to date to rebut any of these conclusions or to support OneQwest's contention made at the TRO hearing that their business was a legitimate multilevel marketing business like the noted Amway company. *Webster v. Omnutrition International, Inc.* 74 F.3d 776, 781 (9th Cir., 1996)



QUEST'S MOTION FOR CONTEMPT OF COURT
ORDER AND FOR SANCTIONS (NO. C 02-829R) - 3
[13141-0485/LA022850.018]

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE 206-583 8888
FAX 206 583 8500

The Court sternly warned OneQwest that

> [t]here should be **absolutely no solicitation from any new accounts or new customers in any form.** And I don't know how many different forms—advertising, solicitation, business pitches, you name it—were taking place. **That should stop right away.**
>
> I think—incidentally, I'm not going to give [OneQwest] 30 days. No way. I am persuaded that this is serious enough and things are happening at a pace that's warranting shutting down the web site **immediately... there are thousands of perfectly innocent people out there who may have paid money to buy into this,** that they should be given some form of notice as to why there's a big dark hole where [OneQwest was] communicating with the web site before. I mean [OneQwest] must have a list of people they're in touch with.
>
> \* \* \*
>
> **And you've got to *give* them notice.** Because otherwise, they're all going to be exposed to the fact that they're violating some trademark infringement. You've got to make this clear to these people. They're not going to know.

Rava Decl. ¶3, Ex. B (Transcript) at pp. 28-29.

Consistent with the Court's admonitions at the hearing, the Court then entered a written order on April 19, 2002 (the "April Order"). OneQwest (and all affiliated parties) were ordered to *immediately cease and desist using* the name "OneQwest" and all other confusingly similar marks. The April Order also required OneQwest to notify and communicate the substance of the April Order to OneQwest's affiliated parties, agents and customers "including without limitation Phil A. Piccolo, PAP, Net Tech Investments, and NetQwest."

Astonishingly, while OneQwest did take its primary website down, it continued to violate the Court's Order and infringe Qwest's famous mark in connection with its business practices. Qwest identified the continued infringements to OneQwest and demanded



QUEST'S MOTION FOR CONTEMPT OF COURT
ORDER AND FOR SANCTIONS (NO. C 02-829R) - 4
[13141-0485/LA022850.018]

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE 206 583 8888
FAX 206 583 8500

immediate compliance with the Court's April Order  See Rava Decl ¶¶ 4, 5 & 6, Exs C, D & E. In fact, defendant OneQwest never actually removed the infringing content as the Court ordered  *Even today OneQwest's new website and the source code underlying that website still use "OneQwest"* and thus still violates the Court's April Order  Rava Decl ¶7, Ex F  Obviously, OneQwest never took the Court's Order seriously - The innocent public can still be misdirected to this very day

OneQwest has also disobeyed the portion of the April Order requiring it to notify its affiliated infringers and customers  In response to specific requests seeking documents to confirm OneQwest's compliance, apart from the initial website posting, Defendant has not produced a single document demonstrating that it notified anyone about the infringement  As a result, Qwest has been unable to confirm that any of the admitted 90,000 signed-up OneQwest customers are aware that their continued use of the "OneQwest" name is illegal  This conduct is particularly egregious in view OneQwest's distribution of duplicating OneQwest websites, which, in turn, create still further geometrically expanding infringements  Rava Decl ¶2, Ex B (Transcript) at pp 22-25

**B.  OneQwest's Violation of the Court's September 2002 Discovery Order**

Qwest diligently sought discovery by way of document requests and interrogatories related to (1) the relationship between OneQwest and the network of affiliated parties that assisted OneQwest, (2) OneQwest's compliance or lack thereof with the April Order and (3) the profits realized by the infringement  Specifically, Qwest sought the evidence and financial data as to where the money from its memberships went and how many were sold  After being given substantial extensions of time, OneQwest finally served its initial responses to Qwest's discovery requests on August 22, 2002 (the "Initial Responses")

QUEST'S MOTION FOR CONTEMPT OF COURT
ORDER AND FOR SANCTIONS (NO  C 02-829R) - 5
[13141-0485/LA022850 018]



1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206-583-8888
FAX 206-583 8500

The Initial Responses, however, were nonresponsive and blatantly evasive. In the Initial Responses, OneQwest used the bulk of its 90,000 internet sign-ups as grounds for arguing that such a list would be burdensome to produce. *See* Rava Decl ¶2, Ex A (Discovery Report) at A-3. Not a single document was produced. After numerous broken promises by OneQwest, Qwest was forced to compel the discovery. Qwest gave OneQwest still further opportunity to comply by virtue of the fact that Qwest employed the procedure of a CR 37 submission. One day after the submission of its portion of the Rule 37 brief was due, OneQwest provided supplemental responses and only 26 pages of documents (the "First Supplemental Responses"). Furthermore, while it alleged that only a portion of its 90,000 members paid the $1,300, OneQwest failed to provide the underlying financial data which would corroborate or refute this bald assertion. *See* Rava Decl ¶2, Ex A (Discovery Report) at A-30.

On September 23, 2002, this Court held a telephonic hearing regarding the Motion to Compel. At the hearing, the Court stated that OneQwest's Initial Responses were "woefully inadequate," and awarded Qwest its attorneys' fees for bringing the motion. It also again sternly warned OneQwest that it would impose more severe sanctions if the defendant did not fully and completely provide discovery, including producing relevant documents, by September 27, 2002. *See* Rava Decl ¶8 at Ex G (September Order).

Defendant's counsel argued that it would be too burdensome to produce the over 90,000 membership lists. Plaintiff's counsel pointed out that, if OneQwest did not produce data sufficient to determine its membership and the revenues received from such memberships, Plaintiff could not prove OneQwest's profits. The Court specifically noted that if OneQwest continued to fail to provide the documents of its 90,000 members, Qwest could be entitled to contend, in view of the failure to produce, that Qwest's damages could be the

QUEST'S MOTION FOR CONTEMPT OF COURT
ORDER AND FOR SANCTIONS (NO C 02-829R) - 6
[13141-0485/LA022850 018]

Perkins
Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE 206 583 8888
FAX 206 583 8500

total number of sign-ups multiplied by the cost of a membership for becoming a OneQwest member

The Court also instructed Qwest to file a report with the Court on October 1, 2002 indicating defendant's compliance or lack thereof with the September Court's Order. OneQwest, however, never complied with the Order compelling further discovery and ignored the Court's stern warnings Qwest then filed its Discovery Report detailing defendant's further abuses on October 1, 2002 In the Discovery Report, Qwest indicated that it would be seeking further sanctions by way of this Motion as the Court indicated it would consider at the September hearing

### III.
### ONEQWEST SHOULD BE SANCTIONED TO PRESERVE THE INTEGRITY OF THE COURT, ADDRESS THE PREJUDICE THAT HAS BEFALLEN QWEST AND TO DETER ONEQWEST AND CYBER PIRATES LIKE ONEQWEST FROM SIMILAR CONDUCT

**A.  Dispositive Sanction Is An Appropriate Sanction In This Case.**

In view of the various abuses and violations of the Court's Orders, severe sanctions are warranted in order to preserve the integrity of the Court's docket and the orderly administration of justice and may be imposed pursuant to the Court's inherent authority *See Chambers v NASCO*, 111 S Ct 2123, 2136 (1991)

Rule 37 of the Federal Rules of Civil Procedure also provides sanctions to deter exactly the type of discovery abuses and acts of contempt of court that OneQwest has consistently committed since the beginning of this case Fed R Civ P 37(b)(2)(c) and (d) provide two independent grounds for granting dispositive sanctions Fed R Civ P 37(b)(2)(c) mandates "an order    dismissing the action or .   rendering a judgment by default" for failure to obey a discovery order

QUEST'S MOTION FOR CONTEMPT OF COURT
ORDER AND FOR SANCTIONS (NO C 02-829R) - 7
[13141-0485/LA022850 018]



1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE 206 583 8888
FAX 206-583-8500

Dismissal is appropriate under Rule 37(b) whenever "a party has acted willfully or in bad faith in failing to comply with the rules of discovery or with Court Orders enforcing the rules." *G-K Properties v. Redevelopment Agency of the City of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978) (dismissal for last minute tender of relevant documents); *see also National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 641, 96 S.Ct. 2778 (1976) (dismissal is also proper to deter other litigants).

Dismissal under Fed. R. Civ. P. 37(b) is permitted even absent willfulness or bad faith. *See United Artists Corp. v. La Cage Aux Folles, Inc.*, 771 F.2d 1265 (9th Cir. 1985) (dismissal for failure to respond to Interrogatories without finding of willfulness or bad faith).

Alternatively, Fed. R. Civ. P. 37(d) mandates dismissal for, *inter alia*, failure to respond to interrogatories. Under Rule 37(d) no prior Court Order is needed. *See Minnesota Mining & Manufacturing Co. v. Eco Chem., Inc.*, 757 F.2d 1256 (Fed. Cir. 1985) (entry of default judgment for improper response to interrogatories in absence of prior Court Order compelling response).

Dismissal rests soundly with the discretion of the Court. *G-K Properties*, 577 F.2d at 647. The Ninth Circuit has spoken on the use of dismissal as a discovery sanction against recalcitrant parties:

> "We encourage such orders. Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism."

*G-K Properties*, 577 F.2d at 647.



Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE 206.583.8888
FAX 206.583.8500

Because OneQwest has repeatedly and in bad faith disobeyed the various Court Orders and stern warnings, default under Fed R Civ P 37(b)(2) for failure to obey a Court's Order is warranted. Further, since OneQwest failed to respond to Qwest's discovery, dismissal under Fed R Civ P 37(d) for failure to respond is also appropriate.

Additionally, OneQwest's frivolous supplemental responses, which frustrated the intent of the Court Order compelling discovery by providing no meaningful discovery also justifies dismissal for a failure to respond since evasive or incomplete answers, under Fed R. Civ P 37(a)(3), are to be treated as if no answer was made. *See also Minnesota Mining*, 757 F 2d at 1261

The Court must consider five factors in assessing the propriety of a case-dispositive sanction. (1) the public's interest in expeditious, resolution of litigation, (2) the court's need to manage its dockets, (3) the risk of prejudice to the moving party, (4) the public policy favoring disposition of cases on their own merits, and (5) the availability of less drastic sanctions *See Fair Housing of Marin v. Combs*, 285 F 3d 899, 905-06 (9th Cir 2002)

Here, all five factors favor dispositive sanctions. The public certainly has an interest in ending OneQwest's abuses. The Court has need to manage its docket without the constant intervention required by OneQwest's ongoing contempts. Qwest has and is being prejudiced by OneQwest's refusal to provide discovery and its ongoing infringement. OneQwest has had ample opportunity to avail itself of a disposition on the merit, and has been repeatedly

QUEST'S MOTION FOR CONTEMPT OF COURT
ORDER AND FOR SANCTIONS (NO C 02-829R) - 9
[13141-0485/LA022850 018]



Perkins
Coie LLP

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE 206 583 8888
FAX 206 583-8500

warned. Finally, lesser sanctions were previously imposed but did not deter OneQwest in the slightest, thus proving that lesser sanctions would be to no avail.

**B.  The Court Should Sanction OneQwest For Violating the September Order By Deeming Issues For Which Discovery Was Sought But Refused As Established For Purposes of This Action.**

Under Fed. R. Civ. P. 37(b), "the court ... may make such orders in regard to the failure as are just." Rule 37(b)(2)(A) specifically authorizes entry of

> An order that the matters regarding which the [original, defied] order was made or any other designated facts *shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.* (Emphasis added.)

The sanction need only bear "a reasonable relationship to the subject of discovery that was frustrated by the sanctionable conduct," for it to be upheld. *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001).

In *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247 (Fed. Cir. 1990), interpreting Ninth Circuit law, a finding of non-infringement was imposed because the plaintiff failed to provide sufficient details about the infringement. A sanction of non-infringement under Rule 37(b)(2)(A) was deemed particularly appropriate since this was the very discovery that Refac failed to provide.

Here, the same is true with respect to the issue preclusive sanctions sought herein. Qwest has sought discovery about the role of Keith Johnson, Phil Piccolo and William O'Keefe, NetQwest and OneNet Place in the business operations of OneQwest and the decision to willfully infringe. Since OneQwest has failed to provide discovery on this issue,



Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE 206 583 8888
FAX 206 583 8500

for purposes of the present case against OneQwest, that it be taken as established that OneQwest admits that these individuals and co-infringers NetQwest and OneNet Place are personally and, additionally liable for this action Keith Johnson and William O'Keefe are officers of OneQwest It is well settled under Ninth Circuit law that officers and directors of a corporation are personally liable for trademark infringement and unfair competition *See The Committee for Idaho's High Desert, Inc. v. Yost, et al.*, F 3d 814, 823-24 (9th Cir 1996) In addition, OneQwest admitted that Phil Piccolo is the "Master Distributor" for OneQwest By his actions, Mr Piccolo personally contributed to the infringement of Qwest's intellectual property and he should also be held personally liable [3]

There is no dispute that OneQwest sells its subscription for $1,300 It has admitted 90,000 customers, yet failed to provide complete discovery about them Discovery on the financials was also not provided Because Defendant has concealed this discovery, Qwest has no way to prove the profits realized by OneQwest It is therefore entirely appropriate to have as a discovery sanction the fact deemed established that the 90,000 customers paid $1,300 00 each for a subscription

## C. An Award of Attorneys' Fees and Costs Is Another Appropriate Sanction In This Case.

Fed. R Civ P 37(b) and (d) provide that the Court shall require payment of attorneys' fees and costs against the disobedient party "unless the Court finds that failure to comply was substantially justified." In this case, there is absolutely no justification OneQwest's failure to completely respond several times to Interrogatories and document requests and to honor promises made at meet and confers and its several acts of civil contempt all warrant the imposition of fees and costs Because OneQwest has intentionally

---

[3] Concurrently, Qwest is filing an Amended Complaint to add these parties as defendants

QUEST'S MOTION FOR CONTEMPT OF COURT
ORDER AND FOR SANCTIONS (NO C 02-
829R) - 11
[13141-0485/LA022850 018]



Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE 206 583 8888
FAX 206 583 8500

caused defendants unnecessary expense, it should be made to pay the price for its conduct

*Chambers*, 111 S Ct at 2136

## IV. CONCLUSION

For the reasons set forth above, the court should grant Qwest's motion and enter the proposed Order set forth

DATED  October 17, 2002

**PERKINS COIE** LLP

By _____William C Rava_____
William C Rava, WSBA #29948

**PERKINS COIE** LLP
Breton A Bocchieri, Admitted Pro Hac Vice
1620 – 26th Street, Sixth Floor
Santa Monica, CA 90404
Phone   (310) 788-9900
Facsimile  (310) 788-3399

Attorneys for Plaintiffs Qwest Communications International, Inc and Qwest Communications Corporation

QUEST'S MOTION FOR CONTEMPT OF COURT ORDER AND FOR SANCTIONS (NO C 02-829R) - 12
[13141-0485/LA022850 018]



Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE 206 583 8888
FAX 206 583 8500